**Harold B. SALER, et al.,**

**v.**

**Richard T. SALER.**

**In re Richard T. SALER.**

**Civ. A. No. 97–3509.**
**Bankruptcy No. 96–15119F.**
**Adversary No. 96–1039F.**

United States District Court,
E.D. Pennsylvania.

Feb. 18, 1998.

David A. Koss, Wynnewood, PA, for Richard T. Saler.

Michael L. Temin, Wolf, Block, Schorr & Soliscohen, Philadelphia, PA, Harold B. Saler, Stephen B. Saler Trust.

Frederick J. Baker, Philadelphia, PA, Trustee Pro se.

### MEMORANDUM AND ORDER

BECHTLE, Senior District Judge.

Presently before the court is Richard T. Saler's appeal from a decision by the bankruptcy court granting summary judgment in favor of Harold B. Saler. For the reasons set forth below, the court will affirm the decision of the bankruptcy court.

### I.  BACKGROUND

This litigation arises out of a family dispute centered around theft of trust and personal property. Harold Saler, the appellee in this action, had two sons, Richard and Stephen. In 1973, in anticipation of his death, Stephen created the Stephen B. Saler Trust (the "Trust") to provide for the education of his children. Richard and Harold were named as co-trustees of the Trust. Among the assets held by the Trust were bearer and registered bonds that were located in a safe deposit box accessible by the trustees. Harold also held separate bearer and registered bonds in a different safe deposit box that was accessible by Richard.

In 1988, Richard filed his first Chapter 7 bankruptcy action in the Eastern District of Pennsylvania.[1] Harold filed an adversary proceeding in that action alleging that Richard had wrongfully converted bonds belonging to Harold and the Trust and used them for his personal benefit. Harold also requested a determination that the claims held by himself and by the Trust against Richard were nondischargeable pursuant to Bankruptcy Code sections 523(a)(2), (a)(4), or (a)(6). To resolve this issue, the parties submitted a stipulation (the "1989 Stipulation") to the bankruptcy court stating that

the Debtor [Richard Saler] hereby acknowledges and agrees that if, in any subsequent proceeding, Harold establishes any of the claims set forth in Counts I

---

1.  Bankr.No. 88–13003F.

[fraud and conversion], and III [nondischargeability] of the Complaint any amounts or damages awarded as a result of those claims would constitute a nondischargeable debt in the Bankruptcy Proceeding, pursuant to 11 U.S.C. § 523(a). As a result, any such amounts and damages are and are deemed to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a).

On July 17, 1989, Judge Scholl approved the 1989 Stipulation. Harold then filed a proof of claim and Richard filed an objection. *In re Richard T. Saler*, 205 B.R. 737, 739 (Bankr.E.D.Pa.1997).

In relation to the theft of funds from the Trust, a criminal action against Richard Saler was also proceeding. On July 13, 1990, Richard pled guilty to theft of property from the Trust. *Id.* at 740. The court ordered him to pay $174,000.00 in restitution to the Trust. *Id.*

In the bankruptcy action, the parties filed a second stipulation dated July 21, 1991, (the "1991 Stipulation") with the bankruptcy court which expressly incorporated the 1989 Stipulation. It contained the following language:

2. [Harold's claim is] deemed allowed with the amount of the claim undetermined.

3. Harold B. Saler's claim is nondischargeable pursuant to the stipulation.... That stipulation of July 10, 1989, continues in full force and effect.

4. The allowed amount of the claim of Harold B. Saler will be determined in state court or federal court or other appropriate forum.

5. By this Stipulation, Debtor does not admit the truth of any of the allegations set forth in the Complaint.

(Appellant Br. Addendum B.) On September 30, 1991, the bankruptcy court closed the first bankruptcy action. *Id.* at 740.

To determine the amount of the claim referenced in paragraph 4 of the 1991 Stipulation, Harold brought a civil action against Richard in the state of New York. *Id.* Richard did not answer and default was entered. Damages were subsequently assessed at $2,570,332.30, including punitive damages, and an order of default judgment in that amount was entered against Richard.

On June 4, 1996, Richard filed his second Chapter 7 bankruptcy action in the Eastern District of Pennsylvania. On September 4, 1996, Harold filed a complaint requesting determination that Richard's prepetition debt (the same debt at issue in the first action) owed to him and the Trust are nondischargeable pursuant to Bankruptcy Code sections 523(a)(2),[2] (a)(4)[3] or (a)(6)[4]. Richard filed an answer conceding that the debt owed to the Trust is nondischargeable, but contending that the debt owed to Harold is dischargeable. *Id.* at 741.

After hearing oral argument, the bankruptcy court entered judgment in favor of the Trust in the amount of $174,000.00 plus interest and granted summary judgment in favor of Harold holding that the prepetition debt, in the amount of $2,570,332.30 plus interest, was nondischargeable. The bankruptcy court based this holding on the parties' previous stipulations that the debt was nondischargeable. Richard filed a motion for reconsideration. After hearing further oral argument, the bankruptcy court denied the motion. (Tr. 4/9/97.) On April 24, 1997, Richard filed a notice of appeal to this court.

## II. *JURISDICTION & STANDARD OF REVIEW*

The United States District Court for the Eastern District of Pennsylvania has jurisdiction to hear appeals from final judgments, orders and decrees entered by the United States Bankruptcy Court for the Eastern District of Pennsylvania. 28 U.S.C. § 158(a). In an appeal from a bankruptcy court deci-

---

2. That section provides that debts for money, property, services obtained by false pretenses, a false representation or actual fraud are not dischargeable in bankruptcy.

3. That section provides that debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny are not dischargeable in bankruptcy.

4. That section provides that debts for willful or malicious injury by the debtor to another entity or to the property of another entity are not dischargeable in bankruptcy.

sion, the district court sits as an appellate court and has plenary review over conclusions of law, but may not set aside findings of fact unless they are clearly erroneous. *Century Glove, Inc. v. First Am. Bank of New York,* 860 F.2d 94, 100 (3d Cir.1988).

## III. *DISCUSSION*

Richard Saler argues that his prepetition debt to Harold Saler is dischargeable in bankruptcy and asks the court to reverse the bankruptcy court's decision for three reasons: (1) the bankruptcy court erred in determining that the 1991 Stipulation did not have to comply with Bankruptcy Code sections 524(c)(2) and (c)(3) [5]; (2) the 1991 Stipulation is void and of no force or effect because it failed to comply with those sections; and (3) the Bankruptcy Court erred in applying the doctrine of res judicata based on the 1991 Stipulation because it is a void agreement. (Appellant Br. at 3–6.)

### A. *Compliance with the Code*

■ Richard argues that the 1991 Stipulation is void because it did not comply with 11 U.S.C. § 524(c)(2) and (c)(3). The bankruptcy court disagreed and this court also disagrees.

As the bankruptcy court clearly and correctly explained in its opinion, sections 524(c)(2) and (c)(3) govern reaffirmation agreements regarding dischargeable debts. Richard and Harold never entered into a reaffirmation agreement. They entered into a nondischargeability agreement. Once that agreement was approved by the Bankruptcy Court, it had the same force as a court's order. Section 524, by its terms, only applies to reaffirmation of dischargeable debts. The parties stipulation and the court's order rendered the debt nondischargeable. Therefore, by the terms of section 524, the agreement could not be governed by that section. *See*

*In re Martinelli,* 96 B.R. 1011, 1014 (9th Cir. BAP 1988); *see also In re Cheripka,* 122 B.R. 33, 37 (Bankr.W.D.Pa.1990)(consent orders are not reaffirmation agreements and 524(c) does not apply).

The legislative history of section 524 further confirms that section 524 was intended to govern reaffirmation agreements and not intended to govern or limit dischargeability agreements. *See* Collier on Bankruptcy, App. Pts. 4(d) at 4–929 & 4(e) at 4–1797 (15th ed. rev.1996)(early versions of section prohibited all reaffirmation agreements but permitted settlements of dischargeability litigation); 124 Cong. Rec. 14722–23 (daily ed., Sept. 7, 1978) (Senate debated S 2266 and amended reaffirmation agreements in 524(b) to permit reaffirmation agreements in some circumstances and required right of rescission). *See also* 124 Cong. Rec. H11096 (daily ed. Sept. 28, 1978).

In addition, the court notes that Richard Saler's argued interpretation would lead to an illogical result. The bankruptcy rules mandate that any dischargeability litigation must be filed within 60 days after the first creditors meeting.[6] Bankr.Rule 4007(c). However, under 524(c), a debtor can rescind a reaffirmation agreement anytime prior to discharge or within 60 days after a reaffirmation agreement is filed with the court. If as Richard urges, 524 applied to dischargeability agreements, the time during which a debtor can rescind the agreement could extend past the time in which a creditor could file litigation. Thus a debtor could enter into a nondischargeability agreement, wait until the time for the creditor to file has passed and then rescind the agreement. The court does not believe that Congress intended such a result.

### B. *Force and Effect of the Stipulation*

■ Because the court finds that the 1991 Stipulation is valid and did not have to com-

---

5. That section provides:
   (c) An agreement between the holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under nonbankruptcy law, whether or not discharge of such debt is waived, only if—
   . . .

(2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded . . . [and]
(3) such agreement has been filed with the court. . . .
11 U.S.C. § 524(c)(2) & (3).

6. That meeting must be within forty days of the order for relief. Bankr.R.2003(a).

ply with section 524, it remains in force and effect. Determination of nondischargeability in one bankruptcy case bars a redetermination of that issue in a subsequent bankruptcy case. *See, e.g., In re Webb,* 157 B.R. 614, 616 (Bankr.N.D.Ohio 1993); *In re Crasper,* 142 B.R. 396, 397 (Bankr.D.Idaho 1992)(quoting *In re Payton,* 5 B.C.D. 402, 403 (Bankr. E.D.Pa.1979)).[7]

The parties' nondischargeability agreement was approved by the bankruptcy court. Richard had the opportunity to defend against both the dischargeability and the amount of the debt. The bankruptcy court followed the proper law and procedure. Richard cannot now avoid his nondischargeable debt by filing another bankruptcy action.

## IV.  *CONCLUSION*

For the above reasons, the court will affirm the bankruptcy court's decision.

An appropriate Order follows.

### ORDER

AND NOW, TO WIT, this 18th day of February, 1998, upon consideration of Richard T. Saler's appeal of the bankruptcy court's decision granting summary judgment in favor of Harold B. Saler, Harold B. Saler's response thereto and the record, IT IS ORDERED that the bankruptcy court's decision is AFFIRMED.

---

7. The court agrees with the bankruptcy court's finding that the exception to this rule set forth in section 523(c) is inapplicable in this case. *In re Richard T. Saler,* 205 B.R. at 748.